## In re Goldberg

*C. Brewster Rhoads*, for Committee of Censors.

*John P. Connelly*, for respondent.

PER CURIAM, April 15, 1935.—This respondent, Albert P. Goldberg, was summoned before the special committee of the Philadelphia Bar to answer to certain acts of professional misconduct set forth in the summary of the testimony and report of the said committee. A number of witnesses were summoned, including the respondent himself, and certain documentary evidence was presented. As a result of the hearing before the said special committee, a petition for rule to show cause why he should not be disciplined was served upon him and an answer filed thereto by him and a hearing in his case was held before the five president judges of the courts of common pleas on March 23, 1935.

Albert P. Goldberg was admitted to the bar in August of 1926 and was employed by the office of Samuel W. Salus, Esq., with which office he has since been connected as an employe. His practice has been exclusively in criminal cases. He appeared before the special committee of the Philadelphia Bar in November 1934 and before this tribunal on March 23, 1935.

While respondent was engaged in the representation of a great many defendants arrested for engaging in the illegal lottery business with some knowledge that the fees were paid by the bankers or men at the head of this illegal practice, nevertheless he took his orders from Herbert W. Salus, one of his employers, as the cases were assigned to him. He was employed at a small compensation and acted as one of the attorneys of the office in representing the number writers. Without in any way excusing him for this representation in the number business, he is involved in a charge of professional misconduct of such a more serious nature that his activities in representing number writers sink into insignificance.

This respondent was guilty of conduct that has no justification in his misrepresentation of one Marie Clayton. This young woman had charged one Paul Kroekel, with whom she had been employed, with fornication and bastardy, which case was tried in the Municipal Court on May 25 and 26, 1933, in room 676, before Judge Bonniwell. The verdict of the jury was that of guilty, and the defendant was sentenced to pay the lying-in expenses in the sum of $35, and an order of $9 per week was placed upon him for the maintenance and support of the minor child. The defendant was represented by Samuel W. Salus, Esquire, the employer of this respondent. No payment

was ever made by Kroekel on this order. On July 13, 1933, a new trial was granted to the defendant by Judge Bonniwell. From the evidence it is shown that a Mrs. Agnes Stewart, wife of one Walter Stewart, in May of 1933 was visited by an unknown man who informed her that her husband and Marie Clayton were running around together "and they were caught and he was the father of her baby." This same man returned to the home of Mrs. Stewart on several occasions and induced her to go to the office of Samuel W. Salus, Esq., where she met Arthur Salus, the son of Samuel W. Salus. This was in the middle of the summer of 1933. There Arthur Salus informed her again that her husband was going about with Marie Clayton. Again she was summoned to the Salus office, where she was informed that her husband was going to divorce her. This woman had had some difficulties with her husband because of his friendship with Marie Clayton and she gave Arthur Salus some information about that. A statement was then prepared and sworn to by Mrs. Stewart setting forth those facts. Later she was again summoned to the office of Samuel W. Salus and she was shown a prepared statement in writing charging her husband with adultery and fornication and Marie Clayton with fornication. She denied that she had any knowledge which would justify her taking an affidavit to such state of facts. Arthur Salus advised her to sign the statement and make an affidavit that the facts were true, stating that it would only be used in the event that her husband and Miss Clayton were caught in the act of intercourse, otherwise it would be destroyed. This affidavit was prepared with the specific knowledge and approval of Samuel W. Salus. Induced by the statement of Arthur Salus, the said Agnes Stewart took an affidavit to the said statement in the Salus office on October 3, 1933.

John J. White, a private detective, was employed by Arthur Salus in September 1933 to shadow Marie Clayton, and he made one or more efforts to gain the friendship of Marie Clayton by going to the restaurant where she was employed as a waitress, leaving excessive tips and attempting to induce her to ride with him in his automobile, all of which attempts failed. All of the detective bills were paid by the Salus office for Kroekel, and it is admitted that no fees or bills for any of the services of the Salus office or for detective charges or expenses were paid by Agnes Stewart. On October 13, 1933, in the early evening, Marie Clayton went to the Chestnut Hill Hospital to see a Mrs. Sheppard who had been a patient there. Mrs. Sheppard had gone home that day and as Marie Clayton left the hospital she met Walter Stewart also coming in to see Mrs. Sheppard. It appears that Marie Clayton and Walter Stewart and their families had known each other for 12 or 14 years and that both were friends of Mrs. Sheppard. Marie Clayton rode back to the city in the automobile of Stewart, and while he was in the vicinity of his parents' home, and in Springfield Township, Montgomery County, Detective White, a former Police Chief Koons of Springfield Township, and three other men came up, two of whom were armed with revolvers, and placed Marie Clayton and Walter Stewart under arrest. They were taken before Police Chief Egner in Springfield Township, Montgomery County, and then brought into the Twelfth and Pine Streets police station in Philadelphia and placed in cells. Shortly after their arrival the respondent, Albert P. Goldberg, whom Marie Clayton had never seen before, appeared at her cell and called her by name, handed her his card and volunteered his services. One hour later she was taken to the office of Magistrate Medway, a political affiliate of Samuel W. Salus, by whom the warrant was issued upon the affidavit

dated October 3d and she received a special hearing before him. Mrs. Stewart was present with Arthur Salus, Esq. She was then released on bail and the next day, or about October 19th, Marie Clayton got a notice from the respondent Goldberg to appear at the Salus office. There for the first time Goldberg mentioned the Kroekel case. Goldberg stated that he would help her. A few days later he telephoned her to call at his office and suggested that he would help her in her case before Magistrate Medway if she would drop the Kroekel case, saying that there would be terrible publicity in her case and it would do her a lot of harm in the Kroekel case. Goldberg informed her that if she secured the services of an outside lawyer he could not do her as much good as he, Goldberg, could do being in the Salus office, and insisted upon being her lawyer. She paid Goldberg no fee for any services performed and he asked for none. The Kroekel case was listed for trial before Bonniwell, J., on October 26, 1933, and the case against her for the alleged offense in Springfield Township was set before Magistrate Medway the following day. Goldberg instructed Marie Clayton to tell Judge Bonniwell that she was about to be married and wished to drop the case against Kroekel. The respondent Goldberg appeared with her before the bar of the Municipal Court and Samuel W. Salus was present with the defendant Kroekel. The evidence shows that a few days before this appearance in court Goldberg called at the place of employment of Marie Clayton and took her out in his automobile to discuss the Kroekel case, attempted to get her to drink whiskey which he carried with him, took her to a motion picture theatre, later to the Anchorage, a taproom in Fairmount Park, and then home. As the result of her statements before Bonniwell, J., the bill was submitted and she lost the support order for her minor child and her lying-in expenses. The next day before Magistrate Medway the charge against Marie Clayton and Walter Stewart was dismissed. The private detective White admitted that the warrants which were his authority for the Clayton and Stewart arrests in Montgomery County were based upon an affidavit that contained no averment as to where the offense took place and that at the time the warrants were issued he had no evidence of adultery or fornication. He testified that the warrants were given him for service upon Marie Clayton and Walter Stewart for an offense which to his knowledge had not as yet been committed. The detailed report of this detective given by him to the Salus office did not once mention the fact that he had seen Marie Clayton or Walter Stewart in the act of intercourse at any time and particularly on the night of the arrest. Before this court White testified that he saw Stewart jump off Marie Clayton while in the automobile. The testimony of this witness was convincing that he was not telling the truth. He testified that at the hearing before Magistrate Medway he had testified that he had arrested the defendants in Springfield Township.

Magistrate Medway admitted that as soon as Marie Clayton and Stewart were brought to his office, his clerk notified the Salus office that they were there and that at the hearing detective White testified that the defendants' clothes were mussed. He did not ask where the alleged offense took place and that he held them each under $500 bail for a further hearing at which Arthur Salus informed him that Mrs. Stewart was satisfied to drop the case as she and her husband were going to live again together. The statement attributed to Mrs. Stewart was denied by her in the hearing before this tribunal.

The bail under which Marie Clayton was held by Magistrate Medway is

significant. The maximum fine that can be levied upon a person convicted for fornication is in the sum of $100. The very fact that Magistrate Medway held Marie Clayton in $500 bail indicated his complicity in the scheme or plan of forcing Marie Clayton to withdraw her charge against Paul Kroekel.

The respondent Goldberg testified that his appearance at the Twelfth and Pine Streets police station on the morning of October 14th was a mere coincidence and that Miss Clayton asked him to represent her; that when he learned that she was involved in the Kroekel case he informed Samuel W. Salus that he represented her and he was advised to use his own judgment as to whether he should represent her. He testified that he never saw the affidavit upon which the warrant was issued, never asked where the alleged offense, upon which the arrest was based, took place, and never made any effort to ascertain at all what the basis or foundation of that charge was. Later, before this court, he testified that Samuel W. Salus had advised him to step out of the case but that Marie Clayton had pleaded with him to be her attorney. He then testified that Samuel W. Salus told him to be careful and not to get himself involved. He also knew that Samuel W. Salus intended to try the new trial of the Kroekel case and that Samuel W. Salus was the attorney for Kroekel in the new trial at the Municipal Court at the time he represented Marie Clayton. Goldberg had heard Marie Clayton at the bar of the Municipal Court repeat that Paul Kroekel was the father of her child. Goldberg testified that not only did he ask for no fee, but that after the trial he gave her $75 which he had gotten from Samuel W. Salus. Samuel W. Salus himself testified before the special committee of the Philadelphia Bar that he assumed that Goldberg had charged no fee because "he saw that I (Samuel W. Salus) was getting results." Goldberg's explanation is even more reprehensible. He testified that he would rather not answer as to why he charged her no fee because it would be rather embarrassing to him.

It is patent that this respondent was a party to a conspiracy in the office of Samuel W. Salus and with Samuel W. Salus to involve Marie Clayton in an entanglement so vicious in its design that she would be easily coerced by him as her attorney and adviser, to drop a charge against Paul Kroekel. His remark in court that it would embarrass him to tell why he charged her no fee was intended directly as a defense to a conspiracy then patent to the court, and indirectly to blacken further the reputation of his client.

It must have been apparent to the respondent Albert P. Goldberg that his first duty to himself as a member of the bar and to Marie Clayton, who came under his legal influence, was that he should not represent her having knowledge that his employer Samuel W. Salus was the attorney for Paul Kroekel. Having engaged in this conspiracy with his employer, Samuel W. Salus, to defeat justice and to destroy the legal right that Marie Clayton had to enforce her claim against the father of her minor child, it nevertheless became the duty of Albert P. Goldberg, if he had any semblance of decency and any knowledge of legal ethics, to advise his client at the bar of the Municipal Court that there had been no change in the facts in her case since the trial where Paul Kroekel had been found guilty. He owed her a duty to advise her that it was not proper or necessary for her to withdraw her charges against the said Paul Kroekel. Nevertheless, with full conscious knowledge of all the facts that he was acting adversely to the interest of his client, he prevailed upon her to drop the charges.

It is evident to this court that Albert P. Goldberg was acting in concert and in conspiracy with his employer Samuel W. Salus to work for the interest of his employer Samuel W. Salus in forcing this prosecutrix, by fear and

intimidation, to withdraw her charges against Paul Kroekel. Not only was the respondent Albert P. Goldberg acting adversely to the interest of his client and her legal rights in this case, but in addition he knew at the same time that he was depriving the minor child of Marie Clayton of a support order of $9 a week. In so acting Albert P. Goldberg was guilty of the grossest kind of professional misconduct and for that reason alone, disregarding other charges against him, he should be disbarred from practicing at the bar of this court and his name should be stricken from the roll of attorneys.

## Decree

And now, to wit, April 15, 1935, upon consideration of the rule to show cause why he should not be disciplined, it is ordered that the rule be made absolute and the said Albert P. Goldberg be and is hereby disbarred from practicing at the bar of this court, and that his name be stricken from the roll of attorneys.

Notice of this order to be given by the prothonotary to the Supreme and Superior Courts of Pennsylvania and the several Courts of Common Pleas, the Orphans' Court and the Municipal Court of the City and County of Philadelphia.